```
                    UNITED STATES DISTRICT COURT

                   EASTERN DISTRICT OF CALIFORNIA
```

| | |
|---|---|
| SIERRA RIVERA, individually and as successor in interest to JESSE ATTAWAY, Deceased; BA, a minor, individually and as successor in interest to JESSE ATTAWAY, Deceased, by and through MISTY RIVERA, as Guardian ad Litem; and JIM ATTAWAY, individually,<br><br>        Plaintiffs,<br><br>    v.<br><br>ANDREW CATER; BAO MAI; SCOTT JONES; and COUNTY OF SACRAMENTO,<br><br>        Defendants. | CIV. NO. 2:18-56 WBS EFB<br><br>MEMORANDUM AND ORDER RE: <u>DEFENDANTS' MOTION TO DISMISS</u> |

        Plaintiffs Sierra Rivera and BA, the daughters of the late Jesse Attaway ("Attaway" or "decedent"), along with Jim Attaway, the father of the decedent, bring this case individually and on behalf of the decedent, alleging seven causes of action under 42 U.S.C. § 1983 and California law against Andrew Cater ("Cater") and Bao Mai ("Mai"), deputy sheriffs of Sacramento County; Scott Jones ("Jones"), Sheriff of Sacramento County; and

the County of Sacramento ("the County"). Defendants now move to dismiss plaintiffs' entire Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 13.)

I. Factual and Procedural Background

According to reports, at approximately 5:00 a.m. on September 23, 2016, Attaway entered a home in Fair Oaks, Sacramento. (Compl. (Docket No. 1) ¶ 17.) He had no connection to the house and did not know the homeowner. (Id.) The homeowner discovered Attaway standing in the front room holding a carton of milk. (Id.) When confronted by the homeowner, Attaway asked the homeowner for his car keys and pleaded for the homeowner not to harm him. (Id.) Attaway expressed paranoid thoughts that the police were after him and seemed to be experiencing a psychotic episode. (Id.) After several minutes, Attaway left the home without further incident. He did not cause any harm to the home or its residents, or threaten to do so. (Id.)

Attaway then attempted to enter a neighboring house through a partially open sliding glass door. (Id. ¶ 18.) He was confronted by two individuals, at which point Attaway backed away from the door while begging not to be hurt. (Id.) Again, Attaway did not cause any harm to this house or its residents, nor did he threaten to do so.

Attaway's behavior prompted multiple calls to 911. (Id. ¶ 19.) None of the callers mentioned that Attaway had any weapons, and Attaway was in fact unarmed at all times. (Id.) Deputies Cater and Mai were dispatched to respond to these calls. (Id.) Cater and Mai found Attaway a few blocks away from where

the 911 calls had been placed. (Id. ¶ 20.) Attaway initially ignored the deputies' commands to come towards them. (Id.) The deputies therefore slowly followed Attaway in their car until he came to a stop. (Id.) At that point, the deputies exited their car and assumed "positions of cover." (Id.)

The Complaint alleges that Attaway was unarmed and empty-handed throughout the entire incident. However, the Complaint also acknowledges that the deputies claim that when Attaway turned to face them, he raised his hands in response to their commands and they mistook the wallet he was holding for a firearm. (Id. ¶ 22.) Both deputies then fired their weapons, and at least one of the first shots hit Attaway. (Id.) The deputies contend that after Attaway was shot, he raised his hand again. (Id.) At that point, the deputies fired another round of shots at Attaway, and he was hit again. (Id. ¶ 23.) Attaway then fell to the ground and allegedly tried to raise his empty hands again. (Id. ¶ 24.) Both deputies again fired at Attaway as he remained on the ground, and one of those shots fatally struck Attaway in the head. (Id.)

The deputies claim to have found Attaway's wallet approximately four feet away from his right foot after the shooting. (Id. ¶ 26.) In total, the deputies fired at least eighteen rounds at Attaway. (Id. ¶ 27.) Cater fired at least eleven, while Mai fired seven. (Id.) Twelve seconds passed between the first and last rounds of shots. (Id. ¶ 25.)

On January 1, 2018, plaintiffs filed this action, alleging violation of decedent's Fourth Amendment right to be free from unreasonable seizure and excessive force pursuant to 42

U.S.C. § 1983; violation of decedent's rights under the California Constitution; negligence, wrongful death, assault, and battery pursuant to California State Common Law; failure to adequately train, supervise, and discipline police officers on the proper use of force pursuant to 42 U.S.C. § 1983; and violation of plaintiffs' Fourteenth Amendment right of substantive due process pursuant to 42 U.S.C. § 1983.

II. Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under this standard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

III. Discussion

    A.    First Claim: Excessive Force Against Cater and Mai

Plaintiffs' first cause of action asserts a claim against defendants Cater and Mai for violations of Attaway's civil rights under 42 U.S.C. § 1983. While § 1983 is not itself a source of substantive rights, it provides a cause of action

4

against any person who, under color of state law, deprives an individual of federal constitutional rights. 42 U.S.C. § 1983; Graham v. Connor, 490 U.S. 386, 393-94 (1989). Here, plaintiffs allege that Cater and Mai violated Attaway's right to be free from excessive force under the Fourth Amendment. (Compl. ¶ 39.)

        1. Excessive Force

Defendants argue the Complaint fails to state a claim against Cater or Mai for use of excessive force because the facts demonstrate that the force used was objectively reasonable. (Defs.' P. & A. (Docket No. 13-1) at 3.) Whether an officer's conduct is objectively reasonable under the Fourth Amendment is a question of fact requiring consideration of factors such as "the nature and quality of the alleged intrusion on the individual's Fourth Amendment interests," Graham, 490 U.S. at 396 (internal citations omitted), as well as "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape." Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (citing Graham, 490 U.S. at 388).

Here, it is undisputed that Cater and Mai used deadly force. While defendants argue that such force was reasonable, plaintiffs argue the opposite. As alleged, the facts do not show that there was any "severe" crime at issue[1] or that Attaway posed

---

[1] Defendants argue that Attaway had committed a felony home invasion/burglary of an inhabited dwelling, and that he additionally attempted to steal a vehicle. However, residential burglary is only committed when a person "enters any house . . . with intent to commit . . . larceny or any felony." People v. Goode, 243 Cal. App. 4th 484, 488 (3d Dist. 2015). Here,

5

any threat to the officers' safety. Attaway was unarmed throughout the entire incident and, despite what defendants argue, the complaint alleges that Attaway's hands were empty throughout the entire incident as well. (Compl. ¶ 22-24.) Further, despite Attaway's initial failure to respond to the deputies' orders, by the time the shooting occurred, the Complaint alleges that Attaway was no longer resisting the officers or otherwise attempting to escape.

Accordingly, taking plaintiffs' allegations as true, Attaway posed no danger to the officers, did nothing to provoke them, and there was no severe crime at issue. See Robinson v. Solano County, 278 F.3d 1007, 1014 (9th Cir. 2002) (holding an officer's use of force was excessive in the absence of any of the factors enumerated in Graham). Thus, the Complaint is sufficient to allege a plausible Fourth Amendment violation by Cater and Mai.

### 2. Qualified Immunity

Defendants argue that if the court does not dismiss plaintiffs' Fourth Amendment claim on the ground that the force used was reasonable, the claim must nonetheless be dismissed because Mai and Cater are entitled to the defense of qualified immunity.

---

plaintiffs concede that the facts demonstrate entry, but nothing indicates intent to commit larceny or any felony. Defendants also argue that Attaway violated Vehicle Code § 10851, which prohibits the driving or taking of a vehicle without the consent of the owner. However, the facts as alleged show that Attaway asked the homeowner for his keys, not that Attaway was attempting to take the car without permission. Accordingly, no severe or violent crimes had been committed, particularly none that would justify the use of deadly force.

To determine whether an official is entitled to qualified immunity, a court may begin with the question of whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001), rev'd on other grounds by Pearson v. Callahan, 55 U.S. 223, (2009). The court must also ask whether the constitutional right the officer's conduct violated was a clearly established right. Id. If the court finds the constitutional right was clearly established such that a reasonable officer would be aware that his or her conduct was unconstitutional, then the officer is not entitled to qualified immunity. Pearson, 55 U.S. at 232.

As discussed above, taking plaintiffs' allegations as true, the force used by Cater and Mai in shooting Attaway, taking him to the ground, and continuing to shoot him after he allegedly posed no danger would not be reasonable. Thus, the factual allegations establish a constitutional violation, and the court must next consider whether the officers' conduct violated a clearly established right.

For the purposes of qualified immunity, "clearly established" means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it

is to say that in the light of pre-existing law the unlawfulness must be apparent." Id.

The Supreme Court has determined that an unprovoked use of force is unreasonable under the Fourth Amendment in the absence of any resistance, attempt at flight, danger to the officer, or any other exigent circumstance. See Graham, 490 U.S. at 397. As alleged, Cater and Mai used deadly force on an unarmed individual who was not posing any threat, refusing to cooperate, or attempting to escape. Every reasonable police officer would know that continuously shooting an unarmed, non-threatening person at least eighteen times, even after he was wounded, on the ground, and not posing any danger, would constitute the unlawful use of excessive force. Therefore, at this preliminary stage of the proceedings, the facts as pled do not entitle the officers to qualified immunity, and the court will deny defendants' Motion to Dismiss plaintiffs' first claim.

B. Second Claim: Bane Act Against Cater, Mai, and the County

1. Claim Against Cater and Mai

The Bane Act, codified at California Civil Code § 52.1, creates a civil cause of action for damages against any person who interferes, or attempts to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of a person's constitutional or statutory rights. See Cal. Civ. Code § 52.1. Defendants assert that the Complaint fails to state a valid claim under the Bane Act because plaintiffs have not alleged separate facts showing that Deputies Cater and Mai threatened, intimidated, or coerced the decedent.

Generally, establishing an excessive force claim under the Fourth Amendment also satisfies the elements of section 52.1. See Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013) (explaining that "the elements of the excessive force claim under Section 52.1 are the same as under § 1983."). Accordingly, because plaintiffs have sufficiently stated a claim that the officers used excessive force in violation of the Fourth Amendment, as discussed above, the Complaint states a valid claim under the Bane Act as well.

    2.    Claim Against the County

Defendants' sole argument with regard to the Bane Act as alleged against the County is that because plaintiffs fail to state a Bane Act claim against Cater and Mai, there is no liability against the County under a respondeat superior theory. However, because the court disagrees and finds that the Bane Act claim does not fail as alleged against Cater and Mai, the court similarly will not dismiss this claim as to the County.

    C.    Third Claim: Negligence/Wrongful Death

        1.    Claim Against Cater and Mai

Plaintiffs' claim for negligence/wrongful death is based upon the officers' alleged breach of their "duty of care in their use of deadly force" that they owed to Attaway. (Compl. ¶ 48.) A negligence claim requires a plaintiff to establish: "(1) a legal duty to use due care; (2) a breach of that duty; and (3) injury that was proximately caused by the breach."[2] Knapps v.

---

[2] In this case, there is no debate regarding whether the Complaint properly alleges proximate cause.

9

City of Oakland, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009) (citing Ladd v. County of San Mateo, 12 Cal. 4th 913, 917 (1996)).

Under California law, "peace officers have a duty to act reasonably when using deadly force." Hayes v. County of San Diego, 57 Cal. 4th 622, 629 (2013) (citing Munoz v. Olin, 24 Cal. 3d 629, 634 (1979)). Therefore, Cater and Mai had a legal duty to act reasonably in this situation. As discussed above, viewing the facts in the light most favorable to plaintiffs, the force used by Cater and Mai in shooting Attaway, and continuing to shoot him after he allegedly posed no danger, would not be reasonable. Accordingly, plaintiffs have sufficiently alleged that the officers had a duty and breached that duty. Therefore, plaintiffs have pled a negligence claim and the court will deny defendants' Motion to Dismiss as to this claim.

### 2. Claim Against the County

Plaintiffs allege a direct liability theory of negligence against the County for breaching an alleged duty to "properly train defendants Cater and Mai regarding proper tactics, commands and warnings and on their duty to refrain from using reasonable force." (Compl. ¶ 49.) Defendants argue, and plaintiffs concede, that there is no statutory basis under California law for declaring a public entity directly liable for negligence. (Pls.' Opp'n (Docket No. 14) at 6.) Therefore, plaintiffs will not be permitted to proceed to the jury against the County on their negligence claim premised on a theory of direct liability.

However, plaintiffs also allege the County "is liable

for the wrongful acts of defendant deputies Cater and Mai pursuant to California Government code section 815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability." (Compl. ¶ 52.) See Johnson v. Shasta County, 83 F. Supp. 3d 918, 936 (E.D. Cal. 2015) ("A county can be held liable for negligence of an employer under California Government Code § 815.2.") (citing Robinson, 278 F.3d at 1016). Defendants do not address this argument in their Motion to Dismiss or in their Reply. Therefore, to the extent plaintiffs' negligence claim against the County is based on California Government Code § 815.2., it will not dismissed.

### D. Fourth Claim: Assault and Battery/Wrongful Death Against Cater, Mai, and the County

"The law governing a state law claim for battery is the same as that used to analyze a claim for excessive force under the Fourth Amendment." Warren v. Marcus, 78 F. Supp. 3d 1228, 1248 (N.D. Cal. 2015); Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1273 (4th Dist. 1998). Accordingly, because plaintiffs have sufficiently asserted an excessive force claim, as discussed above, they have also sufficiently pleaded a claim for battery, and therefore the court will deny the Motion to Dismiss as to this claim.

### E. Fifth Claim: Municipal Liability (Ratification) Against Jones and the County

Plaintiffs allege that Sheriff Jones and the County are liable for the actions of Cater and Mai based on a theory of ratification. A municipality may be held liable for a

11

constitutional violation under the theory of ratification if an authorized policymaker approves a subordinate's decision and the basis for it. Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004). However, "mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." Id. at 393. For there to be ratification, there must be "something more" than a single failure to discipline or the fact that a policymaker concluded that the officer's actions were in keeping with the applicable policies and procedures: the plaintiff must show that the decision was the product of a "conscious, affirmative choice" to ratify the conduct in question. Gillette v. Delmore, 979 F.2d 1342, 1347 (9th Cir. 1992).

Here, plaintiffs do not allege that Sheriff Jones was present at the time Attaway was shot, but instead merely allege that Jones and the County "approved, tolerated, and/or ratified the deputies' conduct in shooting Attaway by determining the shooting was reasonable, justified and within policy." (Compl. ¶ 61.) These allegations are insufficient to state a § 1983 claim against the County or Jones based on ratification. Plaintiffs have not identified any facts suggesting that the single failure to discipline the officers rose to the level of ratification, nor that Jones' decision qualified as an affirmative choice to ratify the deputies' conduct. Accordingly, plaintiffs have not pled an adequate basis for municipal liability, and this claim must be dismissed.[3]

---

[3] In the alternative, defendants argue that the claims against Sheriff Jones must be dismissed because they are duplicative of the claims against the County. (Defs.' P. & A. at

12

F. Sixth Claim: Municipal Liability (Failure to Train) Against the County

Plaintiffs allege that the County "failed to properly and adequately train defendant deputies Cater and Mai regarding the use of physical force." (Compl. ¶ 66.) "A municipality's failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006); see also City of Canton v. Harris, 489 U.S. 378, 388, (1989).

To meet this standard, "the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, 489 U.S. at 389. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011). "[P]ermitting cases against cities for their 'failure to train' employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior liability on municipalities--a result [the Supreme Court] rejected in Monell." City of Canton, 489 U.S. at 391-92.

Here, plaintiffs allege that the County was

---

14.) However, the court need not reach this issue because it is dismissing this claim on other grounds.

13

"deliberately indifferent to the obvious consequences of its failure to train its officers adequately," and that said failure "caused the deprivation of Attaway's rights." (Compl. ¶¶ 66-67.) Plaintiffs further allege that the County "acted with intentional, reckless and callous disregard for Attaway's constitutional rights and thereby directly and proximately caused the injuries and damages suffered by plaintiffs." (Id. ¶ 69.) However, the Complaint does not explain what the County's training consisted of, whether there were prior similar acts or any other indications that there was a need for more or different training, or whether the alleged inadequacy was likely to result in constitutional violations. Because the Complaint does not plead these facts, which are necessary to meet the high standard for deliberate indifference, it is insufficient to state a valid § 1983 claim against the County under the theory of inadequate training.

### G. Seventh Claim: Substantive Due Process Against Cater and Mai

Plaintiffs' seventh cause of action, also brought under 42 U.S.C. § 1983, alleges that defendants violated plaintiffs' Fourteenth Amendment substantive due process rights to familial relationship with Attaway when defendants caused Attaway's wrongful and untimely death. (Compl. ¶ 71.)

"The right to familial association . . . is a fundamental liberty interest protected under the substantive due process clause of the Fourteenth Amendment." Motley v. Smith, Civ. No. 1:15-905 DAD, 2016 WL 6988597, at *4 (E.D. Cal. Nov. 29, 2016) (citing Rosenbaum v. Washoe County, 663 F.3d 1071, 1079

14

(9th Cir. 2012)). Only official conduct that "shocks the conscience" is cognizable as a due process violation of the right to familial association. Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).

Whether a particular defendant's conduct "shocks the conscience" is determined by the nature of the surrounding circumstances. Id. at 1137-39. Where the police have committed an "obviously and easily detectable mistake . . . that they had time to detect and correct," a deliberate indifference standard may apply to determine whether the officer's conduct shocks the conscience. Id. at 1139. However, "when an officer encounters fast paced circumstances presenting competing public safety obligations, the purpose to harm standard must apply." Id. Under the purpose to harm standard, "[i]t is the intent to inflict force beyond that which is required by a legitimate law enforcement objective that 'shocks the conscience' and gives rise to liability under § 1983." Id. at 1140.

In Porter, the Ninth Circuit concluded that the purpose to harm standard applied where a defendant officer shot and killed a suspect while the suspect was attempting to drive toward another officer's vehicle. Id. at 1135. Given the facts of the situation, the court determined that the officer "faced an evolving set of circumstances that took place over a short time period necessitating 'fast action' and presenting 'obligations that tend to tug against each other.'" Id. at 1139. Accordingly, the Ninth Circuit concluded that the district court erred in applying a deliberate indifference standard to determine whether the defendant officer had engaged in conduct that shocked

15

the conscience. Id. at 1140.

Here, plaintiffs allege that the deputies' actions shock the conscience because "actual deliberation was practical" and Cater and Mai acted "with a purpose to harm and for reasons unrelated to legitimate law enforcement objectives." (Pls.' Opp'n at 8.) Additionally, plaintiffs allege that Attaway had not committed any serious crime and was not resisting arrest or attempting to escape, and that Cater and Mai acted "with conscious or reckless disregard" for Attaway's life by shooting him even though he was unarmed and posed no imminent threat of death or serious physical injury. (Compl. ¶ 73.)

Defendants contend that plaintiffs' allegations are insufficient because they do not demonstrate that the deputies acted with a "purpose to harm" and merely allege that the officers acted with "deliberate indifference." The court disagrees. Although Plaintiffs' allegations may be minimal, they are sufficient to meet both the "deliberate indifference" and "purpose to harm" standards. The Complaint alleges that Attaway had not committed any serious crime, was unarmed, and did not pose a threat to anyone at the time that he was fatally shot by Cater and Mai.

Under these allegations, and in light of the contention that the fatal shots were fired after an "unusually long period of time during which [the deputies] had the opportunity to reassess the situation they were actually confronting, but failed to do so," (Compl. ¶ 25), it can be inferred that the officers not only committed an obviously and easily detectable mistake that they had time to detect and correct, but also intended to

use force beyond that required by any legitimate law enforcement objective. See F.E.V. v. City of Anaheim, Civ. No. 10-1608 PA SHx, 2011 WL 13227795 (C.D. Cal. Mar. 21, 2011) (concluding that complaint was sufficient to meet both "deliberate indifference" and "purpose to harm" standards because it alleged that decedent "was fatally wounded despite the fact that he had not committed any crime, did not pose a threat, and was unarmed.").

The Complaint therefore sufficiently alleges that the deputies' actions "shock the conscience." "[W]hether the deliberate indifference or the purpose to harm standard applies in this case is left for summary judgment or trial and not a motion to dismiss." Id. at *3. Accordingly, the court finds that plaintiffs have sufficiently alleged a § 1983 claim for violation of the right to familial association.

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss the fifth and sixth claims of plaintiffs' Complaint be, and the same hereby is, GRANTED;

AND IT IS FURTHER ORDERED that defendants' Motion to Dismiss the first, second, third, fourth, and seventh claims of plaintiffs' Complaint be, and the same hereby is, DENIED.

Plaintiffs have twenty days from the date this Order is signed to file a First Amended Complaint, if they can do so consistent with this Order.

Dated: April 4, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

17