UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA RIVERA, individually and as successor in interest to JESSE ATTAWAY, Deceased; BA, a minor, individually and as successor in interest to JESSE ATTAWAY, Deceased, by and through MISTY RIVERA, as Guardian ad Litem; and JIM ATTAWAY, individually,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW CATER; BAO MAI; SCOTT JONES; and COUNTY OF SACRAMENTO,<br><br>Defendants. | CIV. NO. 2:18-56 WBS EFB<br><br>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS |

Plaintiffs Sierra Rivera and BA, the daughters of the late Jesse Attaway ("Attaway" or "decedent"), along with Jim Attaway, the father of the decedent, bring this case individually and on behalf of the decedent, alleging six causes of action under 42 U.S.C. § 1983 and California law against Andrew Cater ("Cater") and Bao Mai ("Mai"), deputy sheriffs of Sacramento County; Scott Jones ("Jones"), Sheriff of Sacramento County; and

the County of Sacramento ("the County"). Presently before the court is defendants' Motion to Dismiss the First Amended Complaint. (Docket No. 26.)

I. Factual and Procedural Background

According to reports, at approximately 5:00 a.m. on September 23, 2016, Attaway entered a home in Fair Oaks, Sacramento. (First Amended Compl. (FAC) (Docket No. 22) ¶ 17.) He had no connection to the house and did not know the homeowner. (Id.) The homeowner discovered Attaway standing in the front room holding a carton of milk. (Id.) When confronted by the homeowner, Attaway asked the homeowner for his car keys and pleaded for the homeowner not to harm him. (Id.) Attaway expressed paranoid thoughts that the police were after him and seemed to be experiencing a psychotic episode. (Id.) After several minutes, Attaway left the home without further incident. He did not cause any harm to the home or its residents, or threaten to do so. (Id.)

Attaway then attempted to enter a neighboring house through a partially open sliding glass door. (Id. ¶ 18.) He was confronted by two individuals, at which point Attaway backed away from the door while begging not to be hurt. (Id.) Again, Attaway did not cause any harm to this house or its residents, nor did he threaten to do so.

Attaway's behavior prompted multiple calls to 911. (Id. ¶ 19.) None of the callers mentioned that Attaway had any weapons, and Attaway was in fact unarmed at all times. (Id. ¶ 20.) Deputies Cater and Mai were dispatched to respond to these calls. (Id. ¶ 19) Cater and Mai found Attaway a few blocks away

from where the 911 calls had been placed. (Id. ¶ 21.) Attaway initially ignored the deputies' commands to come toward them. (Id.) The deputies therefore slowly followed Attaway in their car until he came to a stop. (Id.) At that point, the deputies exited their car and assumed "positions of cover." (Id.)

The First Amended Complaint alleges that Attaway was unarmed and empty-handed throughout the entire incident. However, it also acknowledges that the deputies claim that when Attaway turned to face them, he raised his hands in response to their commands and they mistook the wallet he was holding for a firearm. (Id. ¶ 22.) Both deputies then fired their weapons, and at least one of the first shots hit Attaway. (Id.) The deputies contend that after Attaway was shot, he raised his hand again. (Id.) At that point, the deputies fired another round of shots at Attaway, and he was hit again. (Id. ¶ 23.) Attaway then fell to the ground and allegedly tried to raise his empty hands again. (Id. ¶ 24.) Both deputies again fired at Attaway as he remained on the ground, and one of those shots fatally struck Attaway in the head. (Id.)

The deputies claim to have found Attaway's wallet approximately four feet away from his right foot after the shooting. (Id. ¶ 26.) In total, the deputies fired at least eighteen rounds at Attaway. (Id. ¶ 27.) Cater fired at least eleven, while Mai fired seven. (Id.) Twelve seconds passed between the first and last rounds of shots. (Id. ¶ 25.)

On January 1, 2018, plaintiffs filed this action, alleging violation of decedent's Fourth Amendment right to be free from unreasonable seizure and excessive force pursuant to 42

U.S.C. § 1983; violation of decedent's rights under the California Constitution; negligence, wrongful death, assault, and battery pursuant to California State Common Law; failure to adequately train, supervise, and discipline police officers on the proper use of force pursuant to 42 U.S.C. § 1983; and violation of plaintiffs' Fourteenth Amendment right of substantive due process pursuant to 42 U.S.C. § 1983.

On February 20, 2018, defendants filed a Motion to Dismiss the entire Complaint. (Docket No. 13.) On April 4, 2018, the court issued an order in which it denied defendants' Motion to Dismiss the first, second, third, fourth, and seventh claims, but granted the Motion to Dismiss the fifth and sixth claims. (Docket No. 17.) Plaintiffs were given twenty days to file a First Amended Complaint ("FAC").

Plaintiffs complied and filed a First Amended Complaint on April 24, 2018. (FAC (Docket No. 22).) The First Amended Complaint continues to allege the first, second, third, fourth, fifth, and seventh causes of action,[1] but no longer alleges a failure to adequately train, supervise, and discipline police officers on the proper use of force. (Id.) Defendants now move to dismiss only the third and fifth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 26.)

II. Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true

---

[1] Because plaintiffs have removed a cause of action, the seventh cause of action is now renumbered in the First Amended Complaint as the sixth cause of action.

4

and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under this standard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

III. Discussion

    A.    Third Claim: Negligence/Wrongful Death

Plaintiffs allege negligence and wrongful death against Officers Cater and Mai and against the County. Defendants only move to dismiss the cause of action against the County.

        1.    Claim Against the County

In their initial Complaint, plaintiffs alleged negligence against the County based on both a theory of direct liability and a violation of California Government Code § 815.2. In its April 4, 2018 Order, the court dismissed this claim to the extent it was premised on direct liability. (Docket No. 17.) According to defendants, as written the First Amended Complaint appears to still state a direct liability claim for negligence. However, although the wording in the First Amended Complaint is unchanged, plaintiffs represent that they are no longer attempting to hold the County liable based on a theory of direct

5

liability but instead rely solely upon California Government Code § 815.2. (Pls.' Opp'n (Docket No. 27) at 2.) To ensure all parties are in agreement, the court reiterates that the negligence claim is dismissed to the extent it is based upon direct liability. To the extent plaintiffs' negligence claim against the County is based on California Government Code § 815.2., it is not dismissed.

    B.    <u>Fifth Claim: Municipal Liability (Ratification)
         Against Jones and the County</u>

        Plaintiffs allege that Sheriff Jones and the County are liable for the actions of Cater and Mai based on a theory of ratification. A municipality may be held liable for a constitutional violation under the theory of ratification if an authorized policymaker approves a subordinate's decision and the basis for it. <u>Lytle v. Carl</u>, 382 F.3d 978, 987 (9th Cir. 2004). However, "mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." <u>Id.</u> at 393. For there to be ratification, there must be "something more" than a single failure to discipline or the fact that a policymaker concluded that the officer's actions were in keeping with the applicable policies and procedures: the plaintiff must show that the decision was the product of a "conscious, affirmative choice" to ratify the conduct in question. <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1347 (9th Cir. 1992).

        As with the original Complaint, plaintiffs do not allege that Sheriff Jones was present at the time Attaway was shot, but instead merely allege that Jones and the County "approved, tolerated, and/or ratified the deputies' conduct in

shooting Attaway by determining the shooting was reasonable, justified and within policy." (FAC ¶ 65.) Although plaintiffs have added to their First Amended Complaint allegations that Sheriff Jones was given a full briefing of the shooting and thus had knowledge of its surrounding circumstances (id. ¶ 64), the allegations remain insufficient to state a § 1983 claim against the County or Jones based on ratification. Mere failure to overrule a subordinate's action, even after having been fully briefed on the event, does not rise to the level of ratification. Ratification "requires that an official policymaker make a deliberate choice from among various alternatives to follow a particular course of action." Gillette, 979 F.2d at 1348; see also Peterson v. City of Fort Worth Texas, 588 F.3d 838, 848 (5th Cir. 2009)(no ratification of use of excessive force where Chief of Police determines, after investigation, that the officers complied with department policies).

Plaintiffs have also added allegations that during Sheriff Jones's seven-plus years as Sheriff, he has determined that every officer-involved shooting was consistent with department policy. (FAC ¶ 33.) Obviously, no two incidents can be factually identical, and Sheriff Jones' responses to those prior incidents are irrelevant to whether, in this particular incident, his actions rose to the level of ratification. Plaintiffs' Amended Complaint thus still fails to meet the requirements for pleading a claim of liability under the ratification theory. Accordingly, this claim must be dismissed.

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss (Docket No. 26) be, and the same hereby is, GRANTED as

7

follows:

1. With regard to plaintiffs' third cause of action, the court GRANTS the Motion to Dismiss, but solely to the extent the claim is premised on direct liability.
2. With regard to plaintiffs' fifth cause of action, the court GRANTS defendants' Motion to Dismiss.

Plaintiffs' first, second, fourth, and sixth claims remain, as does the third claim, to the extent that it is not premised on direct liability.

Dated: July 11, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE