UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SIERRA RIVERA, individually and as successor in interest to JESSE ATTAWAY, Deceased; BOBBI ATTAWAY, individually and as successor in interest to JESSE ATTAWAY, Deceased; JIM ATTAWAY, individually,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ANDREW CATER; BAO MAI; SCOTT JONES; and COUNTY OF SACRAMENTO,<br><br>　　　　Defendants. | No. 2:18-cv-00056 WBS EFB<br><br>MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT |

----oo0oo----

　　　　Plaintiffs Sierra Rivera and Bobbi Attaway, the daughters of the late Jesse Attaway ("Attaway" or "decedent"), along with decedent's father, Jim Attaway, bring this action individually and on behalf of the decedent alleging that Sheriff's Deputies Andrew Cater ("Cater") and Bao Mai ("Mai"), Sheriff of Sacramento County Scott Jones ("Jones"), and the

1

County of Sacramento ("the County") violated Attaway's civil rights under state and federal law following his death on September 23, 2016.

Plaintiffs Sierra Rivera and Bobbi Attaway, as Attaway's successors in interest, allege violation of Attaway's Fourth Amendment right to be free from unreasonable seizure and excessive force pursuant to 42 U.S.C. § 1983; violation of Attaway's rights under Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1; claims for negligence, wrongful death, assault, and battery under California common law; and municipal liability. (First Am. Compl. ("FAC") (Docket No. 22).) Then, in their individual capacities, plaintiffs Sierra Rivera, Bobbi Attaway, and Jim Attaway allege violation of their Fourteenth Amendment right of substantive due process pursuant to 42 U.S.C. § 1983 for denial of familial associations with Attaway. (Id.) Defendants successfully obtained dismissal on plaintiffs' claims for negligence against the County and for municipal liability against Jones and the County. (Docket No. 30.)

Defendants now move for summary judgment or, in the alternative, partial summary judgment on plaintiffs' remaining claims. (Docket 44-1.) Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding the motion, the court must view the evidence in the light most favorable to the non-moving party "so long as their version of the facts is not blatantly contradicted by the video evidence." Vos v. City of Newport Beach, 892 F.3d 1024, 1028 (9th Cir. 2018) (citing Scott v.

Harris, 550 U.S. 372, 378-79 (2007)).

I. Facts

Viewed in the light most favorable to the plaintiffs, the evidence shows the pertinent facts as follows:

Cater and Mai fatally shot Attaway following reports of a suspected burglary shortly after 5:00 a.m. on September 23, 2016. According to initial reports, Attaway entered a home in Fair Oaks, Sacramento unannounced and uninvited. (FAC ¶ 17.) The homeowner discovered Attaway standing in the front room, holding a carton of milk apparently taken from the refrigerator. (Id.) Attaway allegedly appeared startled when confronted by the homeowner and expressed concerns that the police were after him. (Id.) After begging the homeowner not to hurt him, Attaway left the home without further incident or harm to the home's occupants. (Id.) Attaway then attempted to enter another home through a partially open sliding glass door. (FAC ¶ 18.) When confronted by the home's residents, Attaway backed away from the door, again begging not to be hurt. (Id.) Attaway left without causing any harm to the people or property. (Id.)

Attaway's behavior prompted multiple 911 calls, and Deputies Cater and Mai responded to 911 dispatch's request for assistance. (Id. ¶ 19.)

A video from an in car camera mounted on the dashboard of Deputy Cater's vehicle ("ICC Video", Docket No. 48, Ex. 3) vividly captures what transpired once the deputies encountered Attaway. If it fairly can be said that a picture is worth a thousand words, this video speaks volumes. It was mounted at the front of the deputies' patrol car in such a position that it

3

shows what happened from their perspective from beginning to end. While the parties disagree in their characterization of the movements Attaway made and what intention can be inferred from them in the seconds that followed, the videotape indisputably shows what the deputies saw, heard and did at the crucial time relative to this motion. The court relies heavily upon it in deciding the motion.

As the deputies' patrol vehicle approached Attaway, Deputy Mai yelled to Attaway, "Hey, come here. Come here." (ICC Video 5:14:32.) Attaway ignored these commands and walked away from the deputies. (ICC Video 5:14:32-5:14:38.) Attaway appeared to touch his face (ICC Video 5:14:39) and Cater warned Mai that he's "got something in his hands." (ICC Video 5:14:40.) The deputies exited their vehicle (ICC Video 5:14:41), while Attaway continued to walk away, turning his body sideways with his left shoulder pointing toward them. (ICC Video 5:14:43-5:14:45.) His right hand was out of the deputies' (and the camera's) view. (Id.)

The deputies again commanded Attaway to put his hands up (ICC Video 5:14:43-5:14:45), and Attaway failed to comply. Instead, Attaway raised his arms, clasped his hands together in front of him, cocked his head between his arms, and screamed "Ahhh!". (ICC Video 5:14:46-5:14:49.) Cater yelled "Coming at me!" (ICC Video 5:14:46-5:14:47) and again commanded Attaway to get his hands up. (ICC Video 5:14:47.) Attaway did not raise his hands, and the deputies fired at least fourteen shots at him. (ICC Video, 5:14:46-5:14:50.) Attaway fell to the ground, rolled, and then raised up onto his knees. (ICC Video 5:14:59.)

4

| | |
|---|---|
| 1 | Attaway began to raise his arms again (ICC Video 5:15:02) and |
| 2 | Cater fired the last shots.  (ICC Video 5:15:02.) |
| 3 | Attaway was struck four times: fatally in the head, and |
| 4 | in the abdomen, left flank, and left foot.  (Pls.' Separate |
| 5 | Statement of Disputed Facts ("Pls.' Disputed Facts") ¶ 4, 10, 59- |
| 6 | 61 (Docket No. 47).)  The deputies claim to have found Attaway's |
| 7 | wallet approximately four feet away from his right foot after the |
| 8 | shooting.  (FAC ¶ 26.) |

II. Federal Claims

Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of [state law] subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." However, public officials sued under § 1983 may be immune from suit under the doctrine of qualified immunity.  See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

Faced with a claim of qualified immunity, the court may first address the question of whether a constitutional violation has been shown and then determine whether defendants are entitled to immunity, or it may address the question of qualified immunity without first deciding whether a constitutional violation has been proven.  Pearson v. Callahan, 555 U.S. 223, 236 (2009). Given the facts and circumstances of this case, this court elects to "resolv[e] immunity questions at the earliest possible stage in litigation" and determine whether qualified immunity applies first.  See id. at 232 (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

A. <u>Qualified Immunity</u>

In a suit for damages under § 1983, public officers charged with violation of a federal statutory or constitutional right are entitled to qualified immunity unless the unlawfulness of their conduct was clearly established at the time of the alleged conduct. <u>District of Columbia v. Wesby</u>, 138 S. Ct. 577, 589 (2018) (citing <u>Reichle v. Howards</u>, 566 U.S. 658, 664 (2012)). Qualified immunity acts as "an immunity from suit rather than a mere defense to liability." <u>Mitchell</u>, <u>supra</u>. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

A right is clearly established for purposes of determining qualified immunity if the "contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001), <u>overruled on other grounds by</u> <u>Pearson</u>, 555 U.S. 223 (2009). If the officer could have reasonably, but mistakenly, believed that his conduct did not violate a clearly established constitutional right, he will be entitled to qualified immunity. <u>Id.</u> at 205-06.

As in any qualified immunity analysis, the court must first identify the law which must be clearly established before the defendant may be deprived of qualified immunity. The plaintiff bears the burden of showing that the rights allegedly violated were "clearly established." <u>Shafer v. Cty. of Santa Barbara</u>, 868 F.3d 1110, 1118 (9th Cir. 2017) (citing <u>LSO, Ltd. v. Stroh</u>, 205 F.3d 1146, 1157 (9th Cir. 2000)). While "a case

directly on point" is not required "for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017)).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." City & Cty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1775-76 (2015) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). Instead, the court must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (citing Brosseau v. Haugen, 543 U.S. 194, 198 (2004)). This is particularly important in excessive force cases because "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." Id. (citing Saucier, 533 U.S. at 205.)

With the teaching of the above cases in mind, the court undertakes the often difficult task of defining the law which plaintiff must show was clearly established in order to overcome qualified immunity in this case. It appears to the court that the relevant question to be addressed under the circumstances of this case is whether the law was clearly established such that reasonable officers on September 23, 2016 would have known that the use of deadly force is unreasonable where an unarmed suspect acts in a threatening, aggressive, and erratic manner and causes the officers to fear for their lives.

1.  Fourth Amendment

Plaintiffs' first claim for relief is for violation of Attaway's Fourth Amendment right to be free from excessive force brought under 42 U.S.C. § 1983. (FAC ¶ 42.) Although Fourth Amendment rights are traditionally regarded as "personal rights which . . . may not be vicariously asserted," Alderman v. United States, 394 U.S. 165, 174 (1969), in § 1983 actions, "the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 369 (9th Cir. 1998) (citing 42 U.S.C. § 1988(a)).

In California, survivorship actions are governed by California Code of Civil Procedure § 377. To have standing, survivors must meet the statutory requirements of § 377.30. Hayes v. Cty. of San Diego, 736 F.3d 1223, 1229 (9th Cir. 2013). Attaway's daughters met these statutory requirements by filing the appropriate declaration and certified copy of Attaway's death certificate. (See Compl. at 16-18 (Docket No. 1).) Accordingly, they have standing, as his successors in interest, to bring a claim under the Fourth Amendment on Attaway's behalf. (FAC ¶ 42, 44.) But while they have met the requirements to bring the claim, they have failed to carry their burden of showing that the right allegedly violated was "clearly established."

Plaintiffs have been unable to cite, and the court has been unable to identify, any judicial precedent which would place a reasonable officer on notice that conduct similar to the circumstances here violated the Fourth Amendment. The cases

plaintiffs offer both in their brief (Opp. to Defs.' Mot. for Summ. J. at 22 (Docket No. 45)) and at the summary judgment hearing were decided on facts that are distinguishable from the ones presented by this case.[1]  Plaintiffs do little more than cite general excessive force principles.  While these are "not inherently incapable of giving fair and clear warning to officers, [] they do not by themselves create clearly established law outside an obvious case."  S.B. v. Cty. of San Diego, 864 F.3d 1010, 1015 (9th Cir. 2017) (citing White, 137 S. Ct. at 552 (internal citations and quotations omitted)).

Plaintiffs argue that there are disputes of material fact as to what happened after the deputies found Attaway.  (Opp. to Defs.' Mot. for Summ. J. at 22.)  Each side characterizes Attaway's movements differently and puts a different spin on the deputies' response.  But many, if not all, of these disputes are definitively settled upon watching the ICC Video.  While "[t]he mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage," the court can discount a party's version of the facts if it is "blatantly contradicted by the video evidence."  Vos, 892 F.3d at 1028 (citing Scott, 550 U.S. at 378-80).  Just as in Scott v. Harris,

---

[1] See, e.g., Longoria v. Pinal Cty., 873 F.3d 699 (9th Cir. 2017) (denying qualified immunity when surrendering unarmed suspect, surrounded by law enforcement, was shot and killed); Torres v. City of Madera, 648 F.3d 1119 (9th Cir. 2011) (denying qualified immunity when officer confused gun with taser, killing the suspect); Adams v. Spears, 473 F.3d 989 (9th Cir. 2007) (denying qualified immunity after suspect rammed car into patrol car and officer shot and killed suspect after suspect exited his vehicle).

9

the video here can "speak for itself."  550 U.S. at 378 n.5.

Plaintiffs, for example, dispute the claim that Attaway assumed a "shooter's stance" or that he appeared to be pointing a gun at the deputies.  (Pls.' Disputed Facts ¶ 35.)  They argue there was sufficient time between the first volley of shots and the second volley for the deputies to contemplate.  (Opp. to Defs.' Mot. for Summ. J. at 24-25.)  They argue that Attaway did not appear to pose a threat to the deputies after he was on the ground.  (Id. at 25.)  The video, however, dispels these arguments.  It shows Attaway's arms extended, hands clasped together in front of him, and head cocked between his arms in a manner which would cause any reasonable person, whether a police officer or not, to reasonably fear they were about to be shot.  (ICC Video 5:14:46-49.)  It records Cater yelling "Coming at me!" (ICC Video 5:14:46-5:14:47) after Attaway screams (ICC Video 5:14:46), and it captures what was indisputably a shooting in self-defense.

After Attaway falls to the ground, the video shows him attempting to raise his hands again while on his knees.  (ICC Video 5:14:59-5:15:02.)  Just reading a verbal description of what happened, it may be easy to argue this could have been an attempt to surrender or an innocent reaction to being shot, but when you look at the video and see what the deputies saw at the time, that is clearly not how it appears.  It appears that Attaway is attempting to resume his shooting posture and that the deputies were responding to a perceived threat to their lives.  (ICC Video 5:15:02.)  There was no clearly established law to put these officers on notice that the use of deadly force was

10

unreasonable under these circumstances.

Accordingly, defendants are entitled to qualified immunity on plaintiffs' Fourth Amendment claim.

### 2. Fourteenth Amendment

Attaway's daughters and father allege Attaway's "untimely and wrongful death" deprived them, in their individual capacities, of their liberty interest in familial associations under the Fourteenth Amendment. (FAC ¶ 70.) In the Ninth Circuit, parents and children have a Fourteenth Amendment liberty interest in "the companionship and society" of each other. See, e.g., Hayes, 736 F.3d at 1229-30; Moreland, 159 F.3d at 371; Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991). Only official conduct that "'shocks the conscience' in depriving [a child] of that interest is cognizable as a violation of due process." Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010). The "shocks the conscience" standard may be met by showing that the officials acted either with (1) deliberate indifference or (2) a purpose to harm for reasons unrelated to legitimate law enforcement objectives. Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008). "Legitimate law enforcement objectives include, among others, arrest, self-protection, and protection of the public." Foster v. City of Indio, 908 F.3d 1204, 1211 (9th Cir. 2018).

The "purpose to harm" standard applies when there is no time for deliberation. Cty. of Sacramento v. Lewis, 523 U.S. 833, 853-54 (1998). The Ninth Circuit has previously applied the "purpose to harm" standard when officers used deadly force in self-defense, Hayes, 736 F.3d at 1230-31, or when the "rapidly

escalating nature" of the confrontation eliminated time for adequate deliberation. Porter, 546 F.3d at 1137 (finding purpose to harm standard applied to five-minute altercation that ended in decedent's shooting). Here, upon examination of the video, the court concludes that defendants did not have time to deliberate during the twelve second confrontation and the purpose to harm standard applies.

Plaintiffs bear the burden of showing the officer acted with a purpose to harm. Moreland, 159 F.3d at 372. To carry that burden, plaintiffs must submit non-speculative evidence that demonstrates an officer's improper motive. Jeffers v. Gomez, 267 F.3d 895, 907 (9th Cir. 2001). Here, plaintiffs offer no evidence to show the deputies' actions were inconsistent with "any purpose other than self-defense." See Hayes, 736 F.3d at 1231. Just as there was no clearly established law to put the officers on notice that their conduct was violative of the Fourth Amendment, there was even less law to even suggest that their conduct violated the Fourteenth Amendment right to familial association. Therefore, the defendants are entitled to qualified immunity on plaintiffs' Fourteenth Amendment claim.

III. State Law Claims

Plaintiffs Sierra Rivera and Bobbi Attaway bring the state law claims discussed below on Attaway's behalf as his successors in interest. (See FAC ¶¶ 46, 51, 57.) They also have standing as Attaway's children to pursue a wrongful death claim based on the underlying torts under California Code of Civil Procedure § 377.60(a). See Quiroz v. Seventh Ave. Ctr., 140 Cal. App. 4th 1256, 1263 (2006) ("The elements of the cause of action

12

for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs.").

It does not follow from the court's determination of qualified immunity on plaintiffs' federal claims that plaintiffs may not proceed to trial on these state law claims. As contrasted with § 1983 law, "California law is clear that the doctrine of qualified governmental immunity is a federal doctrine that does not extend to state tort claims against government employees." Cousins v. Lockyer, 568 F.3d 1063, 1072 (9th Cir. 2009) (internal quotations and citations omitted).

Although some of the questions the court has addressed in the qualified immunity analysis may seem similar, or even superficially identical, to the questions the jury must address on the issues of liability on plaintiffs' state law claims, they are not the same. Thus, while it is incumbent upon the court to determine the "objective legal reasonableness" of police conduct in the qualified immunity context (See Ziglar v. Abbasi, 137 S. Ct. 1843, 1867 (2017)), in the context of determining liability on a claim of excessive force under state or federal law, "the reasonableness of force used is ordinarily a question of fact for the jury." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (quoting Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997)).

Accordingly, the court proceeds to examine whether plaintiffs are entitled to summary judgment on the merits of each of their state law claims.

A. California Common Law Claims

13

### 1. Negligence / Wrongful Death

Under California law, public employees "are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions, subject to the same defenses available to private persons." Hayes v. Cty of San Diego ("Hayes II"), 305 P.3d 252, 255 (Cal. 2013) (citing Cal. Gov. Code § 820). A public entity is liable for injuries caused by an act or omission of its employees acting within the scope of their employment. Cal. Gov. Code § 815.2(a). "[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." Hayes II, 305 P.3d at 255 (citations omitted) (alterations original).

"In California, police officers 'have a duty to act reasonably when using deadly force.'" Vos, 892 F.3d at 1037 (quoting Hayes II, 305 P.3d at 256). In California state tort actions, courts are to apply tort law's "reasonable care" standard, which "is broader than federal Fourth Amendment law." C.V. v. City of Anaheim, 823 F.3d 1252, 1257 n.6 (9th Cir. 2016). Accordingly, under California law, "tactical conduct and decisions preceding the use of deadly force" may "give[ ] rise to negligence liability" if they "show, as part of the totality of circumstances, that the use of deadly force was unreasonable." Hayes II, 305 P.3d at 263 (emphasis added).

The ICC Video reveals several decisions on the part of the deputies that could allow a jury to find they acted negligently, even before they fired the first shot. For example,

14

the deputies failed to identify themselves as law enforcement and failed to warn Attaway that they would use deadly force before shooting. (See generally ICC Video.) "[T]he absence of a warning or order to halt prior to deploying forceful measures against a suspect may suggest that the use of force was unreasonable." Nehad v. Browder, 929 F.3d 1125, 1137 (9th Cir. 2019) (citing Deorle v. Rutherford, 272 F.3d 1272, 1283-84 (9th Cir. 2001)).

The deputies fired a total of eighteen shots. It will be for the jury to determine whether under California law the number of shots rendered the use of force unreasonable. Further, several shots were fired after Attaway was on the ground. "If the suspect is on the ground and appears wounded, he may no longer pose a threat; a reasonable officer would reassess the situation rather than continue shooting." Zion v. County of Orange, 874 F.3d 1072, 1076 (9th Cir. 2017). By defendant Mai's own admission, Attaway "was not a threat to us anymore" when he fell to the ground. (Dep. of Bao Mai at 27:22-23 (Docket No. 44-3, Ex. D).)

Under the broad negligence inquiry adopted by California law, a reasonable jury could find defendants were negligent and the County could be vicariously liable for their negligence under Cal. Gov. Code § 815.2(a). Accordingly, the court finds the facts present a genuine dispute of material fact sufficient to deny summary judgment on plaintiffs' negligence claim.

2. Assault & Battery / Wrongful Death

Under California law, a claim for battery by a peace officer requires the plaintiff to show: "(1) the defendant

15

intentionally touched the plaintiff, (2) the defendant used unreasonable force to arrest, prevent the escape of, or overcome the resistance of the plaintiff, (3) the plaintiff did not consent to the use of that force, (4) the plaintiff was harmed, and (5) the defendant's use of unreasonable force was a substantial factor in causing the plaintiff's harm." Buckhalter v. Torres, No. 2:17-cv-02072-KJM-AC, 2019 WL 3714576, at *11 (E.D. Cal. Aug. 7, 2019) (citations omitted).

A plaintiff bringing a battery claim against a law enforcement official has the burden of proving the officer used unreasonable force. Bowoto v. Chevron Corp., 621 F.3d 1116, 1129 (9th Cir. 2010) (citing Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1272 (1998)). Again, California law demands the court assess the "totality of the circumstances surrounding any use of deadly force," including the actions preceding the application of force. See Hayes II, 305 P.3d at 263. For the reasons set forth above, the court finds that a reasonable jury could find for plaintiffs. Accordingly, the court denies defendants' motion for summary judgment on this claim.

       B.    Tom Bane Civil Rights Act

The Tom Bane Civil Rights Act authorizes civil actions for damages and injunctive relief by individuals whose rights under federal or state law have been interfered with by "threats, intimidation or coercion." Cal. Civ. Code § 52.1(a). While plaintiffs do not need to show "threat, intimidation or coercion" independent from the rights violation to prevail in an excessive force case, they must show a "specific intent to violate the arrestee's rights to freedom from unreasonable seizure." Reese

16

v. Cty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing Cornell v. City & Cty. Of San Francisco, 17 Cal. App. 5th 766, 799, 801 (2017)).[2] As discussed above, plaintiffs have created a genuine issue of material fact as to whether Attaway's rights were violated under state law. The question remaining is whether the deputies had the specific intent to violate Attaway's rights.

Whether the deputies acted with specific intent question is a question of fact. Cornell, 17 Cal. App. 5th at 804. Under this Act, plaintiffs must show the defendants "intended not only the force, but its unreasonableness." Reese, 888 F.3d at 1045 (citing United States v. Reese, 2 F.3d 870, 885 (9th Cir. 1993)). However, California courts have found "[r]eckless disregard of the 'right at issue' is all that [is] necessary." Cornell, 17 Cal. App. 5th at 804.

Viewing the facts in the light most favorable to the plaintiffs, a reasonable jury could find that defendants "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances" under

---

[2] "The Bane Act's requirement that interference with rights must be accomplished by threats, intimidation, or coercion has been the source of much debate and confusion." Cornell, 17 Cal. App. 5th at 801. In Chaudhry, the Ninth Circuit found the Bane Act "does not require proof of discriminatory intent" and "that a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014). But in Cornell, the California Court of Appeal clarified the Bane Act's requirements, finding specific intent was required to make out a claim. The Ninth Circuit adopted the Cornell court's findings in Reese v. County of Sacramento after finding "no 'convincing evidence'" that the California Supreme Court would not follow Cornell. 888 F.3d at 1043. This court is bound by that interpretation.

17

state law when they shot at Attaway eighteen times.  See Reese, 888 F.3d at 1045 (internal quotations omitted).  Accordingly, the court will deny defendant's motion for summary judgment on this claim.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment be, and the same hereby is, GRANTED on plaintiff's claims under 42 U.S.C. 1983 for violations of the Fourth and Fourteenth Amendments;

AND IT IS FURTHER ORDERED that defendants' motion for summary judgment be, and the same hereby is, DENIED on plaintiffs' state law claims for assault, battery, wrongful death, negligence, and violation of the Tom Bane Civil Rights Act.

Dated: October 11, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE